UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| DIANA WERBIANSKYJ, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | CAUSE NO: 3:15-CV-104 |
| v. | ) |  |
|  | ) |  |
| ZURICH AMERICAN INSURANCE | ) |  |
| COMPANY | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

After Plaintiff Diana Werbianskyj's husband was electrocuted in a work-related accident, Plaintiff sought accidental death benefits through two group plans provided by Defendant Zurich American Insurance Company ("Zurich"). Zurich denied the claims because results of a toxicology report indicated that Plaintiff's husband had THC in his blood stream at the time of his death. Thereafter, Plaintiff filed the instant suit pursuant to 29 U.S.C. §1132(a)(1)(B) seeking a determination that Zurich's denial of benefits was "arbitrary and capricious."

Presently before the Court is Zurich's Motion for Summary Judgment filed on February 25, 2016. Plaintiff responded on March 28, 2016 to which the Zurich replied on April 11, 2016. For the following reasons, the Motion for Summary Judgment will be GRANTED.

## APPLICABLE STANDARD

Rule 56(a) authorizes the court to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court is required to enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

1

of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## FACTUAL BACKGROUND

### a. The Accident

Mark Werbianskyj, Plaintiff's husband, worked as a maintenance man for Parker Hannifin Corporation in Ligonier, Indiana until March 18, 2013 at 10:30 p.m. when he was electrocuted and died on the job. Immediately prior to his electrocution, Mr. Werbianskyj had finished mounting a replacement light fixture and had restored power to a nearby receptacle. Mr. Werbianskyj then went up on a scissor lift to complete the installation of the fixture and was electrocuted. (DE 36-1).

After this accident, a detective and maintenance supervisor examined the wires Mr. Werbianskyj was working with and discovered the wires were bare. A subsequent autopsy conducted by the Noble County Coroner provided the following narrative:

> 56 yr old w male maintenance man @ Parker Hannifin. Installing lights up on scissor lift. Fellow employees saw him on his back on scissor lift. Yelled @ him – no response. Cut power, scissor lift lowered, CPR started by employees. Wiring examined by detective & maintenance supervisor. Bare wires noted. 1st and 2nd degree burns to both hands. (Thumb & index finger both hands) Pupils fixed and dialated [sic] no respirations, no pulse. Body transported to Yeager Funeral for transport to forensic center for autopsy. Wife notified via phone. Report from Gary Cox, Detective. Exposed wires noted on housing of electrical fixtures. Photos taken by Gary Cox.

(DE 36-3). The autopsy report identified the anatomic findings as (1) electrical burns, both thumbs and forefingers; (2) abrasions, dorsal hands and left shin; (3) pulmonary edema and congestion; and (4) moderate to severe coronary atherosclerosis. (DE 36-4). The toxicology report

showed blood positive for THC, Quant 5.8 ng/mL, THC-COOH, Quant 33.9 ng/mL, and caffeine. (*Id.*). The urine specimen showed positive for carboxy THC, Quant 598 ng/mL. The death certificate issued for Mr. Werbianskyj's death reported "electrocution" as the immediate cause of death and characterized the manner of death as an "accident." (DE 36-2).

### b. The Insurance Policies

Zurich insured employees of Parker Hannifin Corporation under two group accident life insurance policies ("the Policies").[1] Generally speaking, the Policies state that "if an Insured suffers a loss of life as a result of a Covered Injury, We will pay the applicable" benefit. "Covered Injury" is a defined term meaning "an injury directly caused by accidental means which is independent of all other causes, results from a Covered Accident, occurs while the Covered Person is insured under [these Policies], and results in a Covered Loss." (DE 36-6, p. 7 and DE 36-7, p. 6). The Policies further define a "Covered Loss" as "a loss which meets the requisites of one or more benefits or additional benefits, results from a Covered Injury, and for which benefits are payable under [these Policies]." (*Id.*). An "Injury" is defined as a "bodily injury" and the Policies define "Accident" as "a sudden, unexpected, specific, and abrupt event that occurs by chance at an identifiable time and place during the Policy term."[2]

The Policies also contain general exclusions. Of relevance here is the Drug and Alcohol exclusion which provides:

> A loss will not be a Covered Loss if it is caused by, contributed to, or results from:
> …
> 8. being under the influence of any prescription drug, narcotic, or hallucinogen, unless such prescription drug, narcotic, or hallucinogen was prescribed by a physician and taken in accordance with the prescribed dosage…

(DE 36-6, p. 18; DE 36-7 p. 19).

---

[1] The Policies bear the policy number GTU 3760714 and GTU 3760715.
[2] "Covered Accident" is defined as "an Accident that results in a Covered Loss."

### c. The Claim for Benefits

On May 30, 2013, Plaintiff submitted a claim for accidental death benefits to Zurich under the terms of the Policies. (DE 36-8). Upon receipt of the claim, Zurich assigned the claim to CS Claims Group to investigate the claim and obtain the police report, medical examiner's report, autopsy report, and toxicology report. (DE 36-9). On June 28, 2013, Zurich notified Plaintiff that in addition to the above reports, it was requesting to review the worker's compensation "first report of injury" for Mr. Werbianskyj's death. (DE 36-10). In August, 2013, Plaintiff was notified that the claim had been sent for medical records review. (DE 36-11).

Dr. William Manion, MD of Medford, New Jersey to review Mr. Werbianskyj's records and opine as to the following: (1) please advise the level of intoxication for the THC in the deceased's system at the time of death based on his height and weight; (2) was the THC prescribed by a physician and taken in accordance with a prescribed dosage; and (3) was the THC level enough to impair the deceased to cause the events leading to the electrocution? (DE 36-12, p. 2). On September 5, 2013, Dr. Manion issued his report wherein he listed the records he had reviewed, including the Indiana Worker's Compensation First Report of Employee Injury, the Noble County Coroner Investigation Report, the Parkview Noble Hospital Records, the Ligonier Police Department Investigation Report, the Noble County Coroner Autopsy/Toxicology Reports and the Death Certificate. Dr. Manion noted that the Plaintiff had advised the Ligonier Police Department that several days prior to the incident, Mr. Werbianskyj had smoked marijuana at a funeral. Dr. Manion further reported that in his opinion the high level of THC-COOH in Mr. Werbianskyj's blood indicated that he was a "chronic marijuana user." (DE 36-12, p. 1). Dr. Manion cited numerous articles and studies indicating that THC concentrations in excess of 2-3 ng/mL were

statistically significant so as to impair driving ability and increase the risk of an accident. In conclusion, Dr. Manion opined as follows:

> "[A]fter review of the medical literature it would be my opinion to a reasonable degree of medical and forensic certainty that the THC level was high enough to significantly impair the deceased and contribute to the events that led to his electrocution. The conclusion is based on multiple studies of drivers who are either involved in accidents or are at substantial risk for being involved in a car accident when their marijuana levels are at the level of 5.8 ng/mL as exhibited by Mr. Mark Werbianskyjj at autopsy. I hold all opinions to a reasonable degree of medical and forensic certainty.

(DE 36-12, pp. 2-3).[3]

Thereafter, CS Claims Group continued investigating the incident and collecting additional records relating to Mr. Werbianskyj's death. The record contains numerous letters to the Plaintiff notifying her of the progress of the claim and the actions being undertaken in the investigation of the claim. (DE 36-14).

On September 17, 2014, Dr. Manion issued a second letter in response to a request that he review additional reports and answer the same three questions originally posed. Dr. Manion reviewed documents from the Indiana Department of Labor and the Indiana Worker's Compensation Board. His letter reiterated his original conclusion stating "after review of these additional records, it remains my opinion to a reasonable degree of medical and forensic certainty that the THC level was high enough to significantly impair Mr. Werbianskyj and contribute to the events that led to his electrocution." (DE 36-15, p. 8). Dr. Manion further noted that he reviewed no records indicating that the THC in Mr. Werbianskyj's system was prescribed by a physician or taken in accordance with a prescribed dosage. Dr. Manion was also asked to opine on two additional questions: (1) What action from the impairment would have contributed to the outcome

---

[3] Dr. Manion stated that he had not been provided any records indicating that Mr. Werbinaskyj was legally prescribed marijuana.

here; and (2) Would someone not under the influence have done anything different? In response to the first question, Dr. Manion wrote:

> The Investigation Summary of the US Department of Labor Occupational Safety and Health Administration classified the Human Factor as 'Misjudgment of hazardous situation.' The misjudgment of the hazardous situation occurred because Mr. Werbianskyj was significantly impaired by the high level of the active marijuana drug delta 9 THC. Such high levels interfere with attention to detail, judgment, and concentration. Thus, the high level of delta 9 THC was a significant contributing factor to the 'Misjudgment of hazardous situation' with electrocution and death of Mr. Werbianskyj.

With respect to the second question, Dr. Manion opined:

> Yes a person not under the influence of high levels of delta 9 THC would not have touched the hot bare conductor wire touching the metal part of the light plug. An individual not under the influence of delta 9 THC would have taken precautions to not touch the hot bare conductor wire but instead would have insulated the hot bare conductor wire to prevent accidental electrocution.

(DE 36-15, p. 9).

On September 19, 2014, after receiving Dr. Manion's second letter, Zurich notified Plaintiff by letter that her claim under the Policies was denied. (DE 36-16). As part of that letter, Zurich identified the relevant policy provisions and noted the documents reviewed regarding the incident, particularly the toxicology report. The letter further summarized Dr. Manion's conclusions and informed Plaintiff that Zurich had concluded that "as death was not the result of an accidental bodily injury as defined in the Policies, and is also not covered under the Policy Exclusions of being under the influence of a controlled substance at the time of the event, we regret that we are unable to approve payment of the accidental death benefit under the Policies." (*Id.* at p. 3).

On November 4, 2014, Plaintiff notified Zurich, through counsel, that she was appealing the denial of benefits and requesting documents. (DE 36-17). Those documents were timely

6

provided. The appeal was forwarded to Zurich's ERISA Appeals Committee ("the Committee") for review. Plaintiff did not submit anything to Zurich between November 5, 2014 and January 6, 2015. On January 6, 2015, the Committee notified Plaintiff that "[f]ollowing our review of the claim file and the appeal letter, the Committee affirms the denial of the claim for the reasons set forth in the Zurich letter of 9/19/14 as well as the reasons set forth in this letter." (DE 36-19, p. 1). The Committee letter again recited the Policy provisions relied upon by Zurich to deny the claim and, with respect to the factual scenario, it stated:

> Following the ERISA Committee's review of the appeal and our claim file, the ERISA Committee finds that Mark Werbianskyj's death claim is not covered under the Policy due to the definitions and exclusions included above and as stated in our original denial letter. In response to your appeal letter, I point out that the definition of Covered Injury indicates that the injury must be caused by accidental means which is independent of all other causes and results from a [C]overed [A]ccident. The evidence in this case, which includes the toxicology report and the independent examiner's report, indicates that the use of cannabinoids/THC prior to the accident was a significant contributing cause to the accident. In addition, the cited exclusions apply to the claim.

(*Id.* at p. 3). Subsequently on February 23, 2015, Plaintiff filed the present lawsuit.

## DISCUSSION

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001. "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal citations omitted). ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). ERISA's civil-enforcement provision allows a claimant "to recover benefits due to him under the terms of his plan [and] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B)).

7

The Supreme Court announced the general rule in *Firestone* that "[a] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. If the benefit plan contains a discretionary clause, then the denial of benefits is to be reviewed under an arbitrary and capricious standard. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (citing *Firestone*, 489 U.S. at 111, 115). In this case the parties agree that the Policies contain such a provision and thus, the appropriate standard of review is a deferential one rather than *de novo*.

Where the arbitrary and capricious standard of review applies, the Court's review is limited to the administrative record. *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1999) ("…judicial review is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry any more than they would be if the decisionmaker were an administrative agency."). Thus, "under the arbitrary and capricious standard, the reviewing court must ensure only that a plan administrator's decision 'has rational support in the record.' " *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011) (quoting *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006)). In other words, "[w]hen determining whether a decision to deny benefits was arbitrary and capricious, 'we look to whether specific reasons for denial [were] communicated to the claimant, whether claimant [was] afforded an opportunity for full and fair review by the administrator, and whether there is an absence of reasoning to support the plan's determination.' " *Green v. Sun Life Assurance Co.*, ___ F. Supp. 3d ___, 14 C 4095, 2016 WL 861236, at *4 (N.D. Ill. Mar. 7, 2016) (quoting *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 832–33 (7th Cir. 2009)). "Put

simply, an administrator's decision will not be overturned unless it is 'downright unreasonable.' " *Edwards*, 639 F.3d at 360 (quoting *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006); *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 70 (7th Cir. 2005)). "Although our review is highly deferential, it 'is not a rubber stamp.' " *Cerentano v. UMWA Health & Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013) (quoting *Holstrom v. Metro Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010)); *see also Edwards*, 639 F.3d at 360; *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003).[4]

The Court's analysis begins with a recitation of the reasons provided for denying Plaintiff's request for benefits. Zurich maintains two reasons for its claim denial: first, it asserts that Mr. Werbianskyj's death was not "Accidental Bodily Injury" or a "Covered Injury" as defined in the Policies since it was influenced by the THC in Mr. Werbianskyj's blood at the time of the event; and second, it asserts that a loss caused by or resulting from the insured "being under the influence of any prescription drug, narcotic, or hallucinogen, unless….prescribed by a physician and taken in accordance with the prescribed dosage" is specifically excluded under the Policies.

Given these two rationales for denying benefits, Zurich asserts that the record clearly supports its decision to deny benefits given the results of the toxicology report and Dr. Manion's opinions. It contends that the administrator gave the claim thorough review, utilized a deliberate, principled reasoning process, interpreted the Policies appropriately and made a rational conclusion

---

[4]An arbitrary and capricious standard should be utilized even when a conflict of interest exists. *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The Supreme Court has held that a conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefit claims, even where the administrator is an insurance company and not the beneficiary's employer. *Id.* at 111. In determining whether the decision to deny benefits was arbitrary and capricious, Courts will weigh, as a factor, a potential conflict of interest. *Id*. at 117; *Firestone,* 489 U.S. at 115. Here it appears that the administrator is the same as the insurance carrier. Thus, to the extent a potential conflict of interest exists, the Court has considered that in the analysis.

supported by the facts in determining that the claim should be denied. Thus, it urges the Court to grant summary judgment in Zurich's favor.

In contrast, Plaintiff argues that Zurich's determination that Mr. Werbianskyj's death was not the result of an Accidental Bodily Injury was arbitrary and capricious as was its conclusion that the death was not covered under the Policies because of the exclusion for "being under the influence of a controlled substance." With respect to the first determination, Plaintiff contends that the ordinary purchaser of an accidental death insurance policy would think that the unintentional and unexpected electrocution of her husband constitutes death by accident. As for the second determination, Plaintiff argues that Zurich's conclusion is arbitrary and capricious because it is required to prove more than Werbianskyj was "under the influence" at the time of event.

To sustain her position, Plaintiff cites *Sellers v. Zurich Am. Ins. Co.,* 627 F.3d 627, 732 (7th Cir. 2010) and *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 336 (6th Cir. 2009) wherein both the Seventh and Sixth Circuits concluded that the insurer's interpretation of "accident" (which was not expressly defined in the policies) was arbitrary because the insurer did not define the term "accident" in the ordinary sense based upon a 'person of average intelligence and experience' in the decedent's shoes.

The issue in *Sellers* involved a decedent who died from heart complications during a follow-up surgery to repair a broken wire set in place after the decedent was injured at work months early. The decedent's widow sought accidental death benefits from the insurer due to the death claiming that the wire break constituted an accidental bodily injury. After the physician that installed the original wire represented to the insurer that the wire was "expected" to fail, the insurer

determined the death could not be deemed accidental under the policy. The policy, unlike the Policies here, did not define "accident" or "accidental." (*Id.*).

In finding the insurer's interpretation unreasonable the Court determined that the insurer failed to consider the event as it would be understood by a person of average intelligence and experience. That said, however, the Court ultimately sustained the insurer's denial of benefits because of prior precedent that held "a policy of accidental insurance does not reach … injuries resulting from medical treatment." *See Senkier v. Hartford Life & Acc. Ins. Co.*, 948 F.2d 1050 (7th Cir. 1991).

In *Kovach*, the insured was riding his motorcycle while intoxicated, ran a stop sign, and collided with another vehicle in the intersection. At the time of the accident his BAC tested .148%. He sustained severe injuries that led to the amputation of his left leg below the knee. Mr. Kovach was insured under an accidental death and dismemberment insurance policy provided by his wife's employer. He and his wife filed a claim with Zurich (coincidentally the same insurer as in the present case) for dismemberment benefits. Zurich denied the Kovachs' claim after determining that Mr. Kovach's injuries were the "reasonably foreseeable consequence of driving while highly intoxicated and under the influence of drugs" and therefore not covered as an "accidental" occurrence under the Plan. In examining the record, the Court noted:

> The facts surrounding Mr. Kovach's crash, however, are nowhere near as dramatic as those in *Lennon*.[5] Besides driving while intoxicated—at a level less than half that

---

[5] *Lennon* refers to *Lennon v. Metropolitan Life Insurance Co.,* 504 F.3d 617 (6th Cir.2007). In that case the insured drove his car his car at a high rate of speed the wrong way down a one-way portion of a divided street, losing control of his vehicle. The car hit a curb, flew into the air, and slammed into a brick wall, killing Lennon. Lennon's BAC was later measured at .321, more than three times the legal limit in effect at the time (.10) and high enough to render him only semi-conscious. The insurer denied benefits under a personal accident insurance policy stating that "the act of driving impaired … rendered the infliction of serious injury or death reasonably foreseeable and, hence, not accidental." *Id.* at 620. The case spawned three separate opinions from the Sixth Circuit – a lead, a concurrence, and a dissent. The lead opinion determined that the insurer's denial was not arbitrary and capricious and determined that in

> of Lennon—the only other out-of-the-ordinary thing that Mr. Kovach did was run
> a stop sign, something done with unfortunate frequency by sober drivers. There is
> no indication in the record that Mr. Kovach was traveling at an abnormally high
> rate of speed or driving in an otherwise risky manner.

587 F.3d at 331. The Court then determined that the insurer's interpretation of the plan was arbitrary and capricious because it added an "eligibility requirement" to its interpretation of "accidental" by "excluding activities that render the risk of serious injury 'reasonably foreseeable.'" *Id.* at 336. Instead, the Court noted:

> Zurich could have easily added an exclusion in the Plan for driving while
> intoxicated if it had wished to do so, but it did not. The sheer number of court cases
> nationwide involving disputes over claims by drunk drivers certainly would have
> put it on notice that it would likely face claims under its AD & D policies based on
> injuries sustained in alcohol-related collisions.

*Id.*

Zurich does not address the holdings in either *Sellers* or *Kovach,* instead focusing on the definitions in its Policies, the process it utilized to make its decision and the facts of this particular case. In any event, the court concludes that Plaintiff's reliance on *Sellers* and *Kovach* ultimately does not improve her position based on the facts of this case. First, unlike here where the Policies expressly define the term "Accident," the policies in *Sellers* and *Kovach* did not. *See Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.,* ____ F.3d ___, No. 15-2310, 2016 WL 3741947, at *4 (7th Cir. July 12, 2016) (when not specifically defined, "terms utilized in the policy are accorded their plain and ordinary meaning.").

Second, Zurich's denial letter detailed all the policy definitions and provisions being relied upon and specifically outlined the reasons for the denial ultimately concluding that "death was not

---

cases where an insured's behavior can be deemed grossly negligent a plan administrator could "treat such
conduct as not accidental under a policy that only covers accidents." *Id.* at 621.

the result of an accidental bodily injury as defined in the Policies…" Unlike in *Sellers* and *Kovach*, Zurich did not contend that Mr. Werbianskyj's electrocution did not constitute an "accident;" what it stated was that "the THC level was high enough to significantly impair the deceased and contribute to the events that led to his electrocution." (DE 36-16. p. 2). The Policies define "Accident" as "a sudden, unexpected, specific and abrupt event …" and "Covered Injury" as "an injury directly caused by accidental means *which is independent of all other causes."*(emphasis added). After examining the record, which included Dr. Manion's conclusions as well as the toxicology report, Zurich concluded that Mr. Werbianskyj's THC level was a contributing cause of the accident thereby making the accident not a Covered Injury.

In contrast to the cases cited by the Plaintiff, Zurich has set forth a number of cases and the Court has found some additional cases where Courts concluded that it is not arbitrary and capricious for an insurer to deny benefits where it determines that an insured's level of intoxication or drug usage impaired the insured's ability to avoid an accident.

In *Clark v. Life Ins. Co. of N. Am.*, 950 F. Supp. 2d 1348, 1350 (N.D. Ga. 2013), for instance, the decedent was riding his motorcycle on a highway in Boulder, Colorado, when he skidded off the road, was thrown from the motorcycle, and collided with a tree. Tragically, he died as a result of the injuries he sustained. The subsequent investigation showed that at the time of the accident the decedent was not wearing a helmet; he had a 0.176 *1350 gm/dL blood alcohol concentration ("BAC"); and he tested positive for marijuana. The investigation also showed that the decedent was riding downhill below the speed limit. He was approaching a curve on a dry, paved road when he appears to have braked hard and skidded twenty-six feet to the right, off the road. There were no adverse weather conditions at the time of the crash, and there were no other vehicles involved in the crash. There also were no defects or obstacles in the road.

The policy at issue provided that the insurer will "pay benefits for loss from bodily injuries: a) caused by an accident which happens while an insured is covered by this policy; and b) which, directly and from no other causes, result in a covered loss." In denying the claim, the insurer stated that under the policy an accident was a "sudden, unforeseeable, external event" and that a loss that results from "an action whose outcome is reasonably foreseeable is not a Covered Accident as this policy defines it." It went on to explain that "[s]erious injury and death ... are foreseeable outcomes of operating a motor vehicle while legally intoxicated." Thus, the insurer determined that a loss "resulting from driving while under the influence of alcohol is not an unforeseeable Covered Accident." That said, the insurer stated that if the insured could prove that the decedent's death "did not result from driving under the influence of alcohol or THC [marijuana]" it would reconsider her claim. Based upon the record available to the insurer and the absence of conflicting evidence to the contrary, the Court concluded that the insurer acted reasonably and not arbitrary and capricious.

As was the case in *Clark,* Zurich's investigation determined that the THC level in Mr. Werbianskyj's system was significant and contributed to his judgment which, in turn, caused him, an experienced maintenance man, to touch bare hot wires rather than insulate them. Plaintiff argues that Zurich did not provide sufficient evidence about how her husband's THC level affected his ability to make sound judgments. But, looking at Dr. Manion's two letters, communicated to Plaintiff at the time Zurich denied benefits, Dr. Manion, after fully reviewing the reports and records of numerous agencies, clearly articulates that an individual with the level of THC in his system that her husband did at the time of the electrocution "interfere with attention to detail, judgment and concentration." He further concluded "a person not under the influence of high levels of delta 9 THC would not have touched the hot bare conductor wire touching the metal part

14

of the light plug" rather "an individual not under the influence ….would have taken precautions to not touch the bare conductor wire but instead would have insulated the hot bare conductor wire to prevent accidental electrocution."

Moreover, the Plaintiff never presented any evidence to Zurich that the THC level found in the toxicology report could not have contributed to the cause of the electrocution. She did not even state in her appeal letter to Zurich that her spouse's THC level was so low that it could not have impaired his judgment, thus contributing to the cause of his accident. Rather, she merely argues in her brief that the fact that THC was in his system is insufficient for Zurich to conclude that her husband was impaired at the time of death.[6] But, that is not what Zurich did here. Zurich had an independent medical reviewer who on two occasions reviewed the administrative record and determined that the level of THC in Mr. Werbianskyj's system impaired his judgment and, absent that level of impairment, Mr. Werbianskyj would not have been electrocuted by touching bare wires. Given that she has the burden to show that the insurer acted unreasonably, just as in Clark, the Plaintiff has not met that burden here.

Moreover, courts across the country have upheld plan administrators' determinations that deaths are not "accidental" when the decedent is under the influence of drugs or alcohol at the time of an accident and no other apparent cause of the incident exist. *Stamp v. Metropolitan Life Ins. Co.*, 531 F.3d 84 (1st Cir. 2008) (upholding administrator's determination that the death of the insured was not accidental where had a BAC of .265% and drove his truck into a tree); *Eckelberry v. Reliastar Life Ins. Co.,* 469 F.3d 340, 345 (4th Cir.2006) (upholding plan administrator's

---

[6] Plaintiff makes the argument that Zurich's denial letter refers to THC as a "controlled substance" and that term is not found in the Policy's Intoxication Exclusion. Rather, the terms utilized in the exclusion are "prescription drug, narcotic, or hallucinogen." She further contends that THC is not a "hallucinogen" or a "narcotic" and thus, the Policy exclusion does not apply. This argument is disingenuous given that both state and federal law classify THC as a "hallucinogen." *See* Ind. Code §35-48-2-4(d)(31); 21 U.S.C. §1308.11.

decision where insured had 0.15 BAC, which was fifty percent higher than legal limit and noting that federal courts have with "nearly universal accord" upheld plan administrators' determinations that "alcohol related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA."); see also, *Lennon v. Metro. Life Ins. Co.,* 504 F.3d at 622–23; *Cozzie v. Metro. Life Ins. Co.,* 140 F.3d 1104, 1110 (7th Cir.1998)(finding denial of accidental-death benefits reasonable where there were no witnesses to car crash and no apparent cause of crash other than insured's impaired condition); *Weatherall v. Reliastar Life Ins. Co.,* 398 F.Supp.2d 918, 924 (W.D.Wis.2005); *Mullaney v. Aetna U.S. Healthcare,* *90 103 F.Supp.2d 486, 494 (D.R.I.2000); *Walker v. Metro. Life Ins. Co.,* 24 F.Supp.2d 775, 782 (E.D.Mich.1997); *Schultz v. Metro. Life Ins. Co.,* 994 F.Supp. 1419, 1422 (M.D.Fla.1997); *Nelson v. Sun Life Assurance Co.,* 962 F.Supp. 1010, 1012 (W.D.Mich.1997); *Miller v. Auto–Alliance Int'l, Inc.,* 953 F.Supp. 172, 176–77 (E.D.Mich.1997); *Cates v. Metro. Life Ins. Co.,* 14 F.Supp.2d 1024, 1027 (E.D.Tenn.1996).

In this case, the record clearly supports the conclusion that Zurich considered the terms and conditions of its Policies, the entire administrative record before it and hired a forensic pathologist to aid in determining whether Mr. Werbianskyj's death fell within the purview of the Policies. Dr. Manion reviewed the entire record and concluded that Mr. Werbianskyj's use of THC contributed to his misjudgment when he touched hot bare wires. Plaintiff submitted no competing evidence and, in actuality, she submitted no evidence whatsoever to call into question the conclusions of Dr. Manion. Given this record, there is no question that Zurich acted reasonably in interpreting its Policies and denying benefits. Accordingly, Zurich's Motion for Summary Judgment is GRANTED.

## CONCLUSION

Based on the foregoing, Zurich's Motion for Summary Judgment [DE 35] is GRANTED.

The Clerk is DIRECTED to enter judgment in favor of the Defendant.

Entered: This 1st day of August, 2016

s/ William C. Lee<br>
United States District Court